```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
```

| | |
|---|---|
| **David Alfano,** : | |
| : | |
| Plaintiff, : | |
| : | Case No. 3:04 CV 1406 (JBA) |
| v. : | |
| : | |
| **Bridgeport Airport Services,** : | |
| **Inc., d/b/a Atlantic Air,** : | |
| **d/b/a Atlantic Aviation,** : | |
| **d/b/a Atlantic Aviation** : | |
| **Services, Bridgeport Operation**: | |
| **and Executive Air Support,** : | |
| **Inc., d/b/a Atlantic Aviation** : | |
| **and d/b/a Atlantic Aviation** : | |
| **Services,** : | |
| : | |
| Defendants. : | |

**RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. # 11]**

Plaintiff David Alfano commenced this suit under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, 794a, charging Defendants Bridgeport Airport Services Inc. ("BAS") and Executive Air Support ("EAS") with wrongfully terminating him from his employment with defendants because of his disability. Defendants have moved to dismiss on grounds that plaintiff failed to plead that his termination was solely by reason of his disability, and that plaintiff has not pled that defendants are recipients of federal funds, as required by the Rehabilitation Act. For the reasons discussed below, defendants' motion is DENIED.

1

**I.  Background**

Plaintiff David Alfano worked for defendants from 1995 until his termination on or about August 30, 2002.  See First Amended Complaint [Doc. # 15] at ¶¶ 28-29.  During his employment, he alleges that he consistently received "exceeds expectations" reviews, as well as raises and promotions from defendants, and at the time of his termination held the title of Line Manager.  Id. at ¶¶ 32-35.

Mr. Alfano alleges that he gained weight during the period of his employment, and was morbidly obese by the spring and summer of 2002, weighing more than 360 pounds, at which time other employees began making fun of his weight.  Id. at ¶¶ 39-42.  In response, Mr. Alfano asked his supervisor, Timothy Bannon, who was General Manager of defendants' Bridgeport Fixed Base Operations ("FBO"), to stop this behavior.  Mr. Bannon instead further insulted plaintiff and refused to take action, and the other employees continued to harass plaintiff.  Id. at ¶¶ 44-46.

Also in 2002, plaintiff alleges that Mr. Bannon required all defendants' employees at the Bridgeport FBO to wear new uniforms, and because defendants' supplier did not carry uniforms in the size Mr. Alfano required, he was forced to obtain and pay for his uniform himself.  Because Mr. Bannon refused to reimburse plaintiff for the uniform, plaintiff was the only employee required to pay for his own uniforms.  Id. at ¶¶ 47-51.

On or about August 30, 2002, plaintiff alleges that was informed that he was being discharged for violations of company policy, despite having never before received a warning. Id. at ¶¶ 55-57. He was not told the nature of the violations until he filed a complaint against the defendants in October 2002. Id. at ¶ 58. Plaintiff's one count complaint alleges that he was terminated due to his morbid obesity, and that defendants' stated reasons for the discharge are pretextual. Id. at ¶¶ 59, 72.

**II. Standard**

When deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 513-14 (2002); Conley v. Gibson, 355 U.S. 41, 45-46 (1957). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

**III.  Discussion**

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a), provides:

> No otherwise qualified individual with a disability in the United States shall, solely by reason of her disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . .

Thus, in order to establish a prima facie violation of Section 504, plaintiff must demonstrate that: 1) he has a disability as defined in the Rehabilitation Act; 2) he is "otherwise qualified" for the position; 3) he was terminated from such position "solely by reason of" his or her disability; and 4) the position is part of a program that "receives federal financial assistance."  See Rothschild v. Grottenhater, 907 F.2d 286, 289-90 (2d Cir. 1990).

### A.  "Solely by reason of"

Defendants argue first that plaintiff has failed to allege that he was terminated "solely by reason of his disability." While plaintiff's complaint indeed fails to use the use the word "solely," it broadly alleges that "Defendants terminated Plaintiff's employment due to his actual, of record and/or perceived disability."  Am. Compl. at ¶ 72.  The liberal pleading standard of Federal Rule of Civil Procedure 8 requires no more. Rule 8(a)(2) provides "that a complaint must include 'only a short and plain statement of the claim showing that the pleader is entitled to relief.'  Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the

grounds upon which it rests.' " <u>Swierkieicz</u>, 534 U.S. at 512 (quoting <u>Conley</u>, 355 U.S. at 47).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." <u>Id</u>.(citations omitted).  At this stage of the proceedings, plaintiff need not establish that he will likely prevail in his claims, but merely that he is entitled to present evidence in support of his claim.  Given the notice pleading standard, "a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." <u>Swierkieicz</u>, 534 U.S. at 513-14 (citations and internal quotation marks omitted).  Here, plaintiff's complaint clearly puts defendants on notice of the nature of the claim against them, and, consistent with the allegations, evidence may be developed that defendants terminated him "solely" because of his morbid obesity.

    Plaintiff's more specific allegation that his disability "played a substantial role in Defendants' decision to terminate his employment" also need not be viewed as inconsistent with the requirements of a Rehabilitation Act claim.  As the Second Circuit explained, the "solely by reason of" inquiry "is designed to weed out § 504 claims where an employer can point to conduct or circumstances that are causally unrelated to the plaintiff's

handicap."  Teahan v. Metro-North Commuter R.R. Co., 951 F.2d 511, 516 (2d Cir. 1991) (citations omitted).  When an employer points to such circumstances, a plaintiff is entitled to challenge them as pretextual.  See id.  When, however, an employer "does not disclaim reliance on the handicap, the 'solely by reason of' element is by definition satisfied," even if the employer justifies termination based on conduct caused by the handicap, as in Teahan.  See id. at 516-17 (holding that "solely by reason of" element could be satisfied if the employee was terminated due to absenteeism caused by his substance abuse.)  "The question then becomes whether the employee is qualified despite his or her handicap to perform the essential functions of the job."  Id. at 516.

While plaintiff's use of the word "substantial" is imprecise, it does not foreclose the possibility of proving that the termination was solely on account of his morbid obesity.  Construed liberally, it may refer to the real as distinguished from the pretextual reason for the termination, or it may mean that the reasons for the termination were ultimately causally related to the plaintiff's disability.  Following Rule 8(f)'s requirement that "all pleadings shall be so construed as to do substantial justice," this Court concludes that plaintiff's complaint adequately sets forth a Rehabilitation Act claim.  As the Supreme Court has reasoned, "[t]he Federal Rules reject the

approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley, 355 U.S. at 48.

**B.   "Receives federal financial assistance"**

Defendants also argue that plaintiff has failed to adequately allege that defendants received federal financial assistance.  Plaintiff's Amended Complaint alleges that in "1999, 2000, 2001, and 2002 the City of Bridgeport obtained grants from the Federal Aviation Administration to pay for physical improvements at the Bridgeport Airport," and that the terms of the grants included compliance with the Rehabilitation Act.  Am. Compl. at ¶¶ 52-53.  Further, plaintiff alleges that "[o]n information and belief, Defendants were the intended indirect recipients/beneficiaries of the federal grant money because the improvements were for Defendants' benefit and defendants worked with the City in bringing about the improvements." Id. at ¶ 54. Defendants contend that the allegations that they were the indirect beneficiaries of federal grant money because the airport improvements were made for their benefit, and the allegations that they worked with the City in bringing about the improvements, are insufficient to prove that they were recipients of federal financial assistance as required by Section 504.

In United States Department of Transportation v. Paralyzed

Veterans of America, 477 U.S. 597, 605-06 (1986), the Supreme Court held that by its terms, Section 504 "limits its coverage to the 'program or activity' that 'receiv[es] federal financial assistance,'" but does not extend as far as a program or activity that benefits from the assistance. As the Supreme Court explained:

> Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds . . . By limiting coverage to recipients, Congress imposes the obligations of § 504 upon those who are in a position to accept or reject those obligations as part of the decision whether or not to 'receive' federal funds.

Id.

While an indirect recipient of federal aid is covered by § 504 if it is Congress's intended recipient, a program that merely benefits from the use of the aid is not covered. Thus, in Grove City College v. Bell, 465 U.S. 555, 564 (1984), the Supreme Court found that the college was Congress's intended recipient of federal money even though the checks were sent directly to individual students, who then used the money to pay tuition. In Paralyzed Veterans, 477 U.S. at 606-07, in contrast, the Supreme Court concluded that the airlines were not recipients of federal funds received by airport operators for airport construction projects, because while the funds were used for projects such as runway or taxiway construction that benefitted the airlines, the airlines were in no position to accept or reject the federal

funding.  See also 45 C.F.R. § 83.4(f) (defining "recipient" as "any state or its political subdivision, any instrumentality of a state or its political subdivision, any public or private agency, institution, organization, or other entity, or any person to which Federal financial assistance is extended directly or through another recipient, including any successor, assignee, or transferee of a recipient, but excluding the ultimate beneficiary of the assistance.").  As Grove City and Paralyzed Veterans make clear, distinguishing between recipients and beneficiaries requires evaluation both of Congress's intent and of a party's ability to accept or reject the federal funding.

Defendants, relying on Hamilton v. Illinois Central Railroad Co., 894 F. Supp. 1014 (S.D. Miss. 1995), argue that plaintiff's allegation that defendants "worked with the City in bringing about the improvements" paid for with grants from the Federal Aviation Administration, see Am. Compl. at ¶ 54, suggests only that they operated as independent contractors paid by the City for their services, not that they themselves were recipients of the federal funds.  In Hamilton, the district court considered whether the Illinois Central Railroad ("ICR") could be deemed a recipient of federal financial assistance distributed to the state under the Highway Safety Act of 1973, when the state reimbursed ICR for its work on federally-funded projects.  Evaluating first the language of the Highway Safety Act and

9

implementing regulations, the district court found "no evidence that Congress or the Federal Government intended to provide assistance to or subsidize the operations of railroad companies through this legislation," but rather that the "intended purpose of the reimbursement procedure was merely to compensate the railroad companies for their service." Id. at 1020. Further, the district court held, "[a]s opposed to a government subsidy, purely compensatory payments pursuant to a contract for services do not constitute federal financial assistance," because the contractor is in no position to accept or reject the terms of the federal funding. See id.

Whether financial payment may be deemed a government subsidy or mere compensation for services, however, is a complex question that depends on the particular facts and circumstances of the contract and project at issue. In an en banc decision in Moreno v. Consolidated Rail Corp., 99 F.3d 883 (6th Cir. 1996), for example, the Sixth Circuit concluded that Conrail was a recipient of federal funds under the Federal-Aid Highways Act of 1944 ("FAHA") even though the State of Michigan, not Conrail, directly received the federal funds and Conrail was reimbursed by Michigan for its costs in making the necessary improvements. The Sixth Circuit found unpersuasive Conrail's arguments that it was a mere beneficiary of the federal funds because Congress did not intend in the FAHA to subsidize railroads, and that it was merely paid

10

fair market value for its construction services, not given financial assistance. Instead, the Sixth Circuit found it notable that "it is Conrail that owns and operates the railroad crossing improvements, and it is Conrail that ultimately receives the money for the improvements." Id. at 787; see also id. at 788 ("One can obviously be the recipient of federal financial assistance in kind, and the result is the same whether we think of Conrail as a recipient of dollars or as a recipient of flashers, gates, and the like.") (citing Paralyzed Veterans, 477 U.S. at 607 n. 11). The en banc court reasoned that because Conrail owned the improvements it made, it was not a mere contractor for services and was in a position to decide whether or not to accept federal funding. As to Congress's intent, the court explained:

> Without the federal grade-crossing program, Conrail itself would have to pay 50 percent or 100 percent of the full cost of the improvements; with the federal program, Conrail has to pay less than 10 percent of the cost. Congress may not have chosen to say in so many words that it was subsidizing Conrail and other railroads, but actions sometimes speak louder than words—and Congress was certainly not unaware of the assistance the railroads were receiving.

Id. at 787.

Here, plaintiff's complaint alleges that defendants were indirect recipients of the funds, because they "worked with the City in bringing about the improvements" paid for with grants from the Federal Aviation Administration. See Am. Compl. at ¶ 54. At this stage of the proceedings, these allegations

11

adequately state a § 504 claim, and, without indication of the federal statute under which the City of Bridgeport received the federal funds, the nature of the contract between the city and defendants, and the nature of defendants' work, it would be premature to decide the issue at hand.  Whether defendants were among Congress's intended recipients of the funds and whether defendants were in a position to accept or reject the funds are questions that await further factual development.

**IV. Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. # 11] is DENIED.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

**Dated at New Haven, Connecticut, this 20th day of June, 2005.**