UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| David Alfano, | : | |
| Plaintiff, | : | |
| | : | Case No. 3:04cv1406 (JBA) |
| v. | : | |
| | : | |
| Bridgeport Airport Services, | : | |
| Inc., d/b/a Atlantic Air, | : | |
| d/b/a Atlantic Aviation, | : | |
| d/b/a Atlantic Aviation | : | |
| Services, Bridgeport Operation: | | |
| and Executive Air Support, | : | |
| Inc., d/b/a Atlantic Aviation | : | |
| and d/b/a Atlantic Aviation | : | |
| Services, | : | |
| Defendants. | : | |

RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. # 24]

Plaintiff David Alfano brought this suit under section 504
of the Rehabilitation Act of 1973, 29 U.S.C. §§ 794, 794a,
alleging that defendants Bridgeport Airport Services, Inc. and
Executive Air Support, Inc. unlawfully terminated him from his
employment because of his disability.  In November 2004,
defendants moved to dismiss plaintiff's Amended Complaint on the
basis of, inter alia, failure to plead that plaintiff's
termination was based solely on his disability, as required by
the Rehabilitation Act.  See [Doc. # 11].  In June 2005, the
Court denied defendants' motion to dismiss, construing liberally
plaintiff's allegations that "Defendants terminated Plaintiff's
employment due to his actual, or record and/or perceived
disability" and that his disability "played a substantial role in

1

Defendants' decision to terminate his employment" to suffice under the Rehabilitation Act and Fed. R. Civ. P. 8.  <u>See</u> Dismissal Ruling [Doc. # 16].  In denying defendants' subsequent motion for reconsideration, the Court permitted the plaintiff to amend his complaint, as proposed in his opposition to defendants' motion, to incorporate the word "solely" into his Rehabilitation Act claim and thus track the language of the Act.  <u>See</u> Reconsideration Ruling [Doc. # 21] at 2.

However, rather than incorporating the word "solely" into his allegations as proposed, plaintiff filed a Second Amended Complaint which alleges, <u>inter</u> <u>alia</u>, "Plaintiff's actual, of record and/or perceived disability and his failure to engage in a discriminatory hiring practice regarding the Hispanic female were the sole causes of Defendants' decision to terminate his employment. . . . Defendants terminated Plaintiff's employment solely due to his actual, of record and/or perceived disability and as part of Defendants' discriminatory hiring practices." Second Amended Complaint ("SAC") [Doc. # 23] at ¶¶ 71-72. Defendants subsequently filed the instant Motion to Dismiss arguing that because plaintiff's Second Amended Complaint alleges he was terminated for reasons in addition to his disability, he cannot prove that he was terminated "solely by reason of" his disability, as required by the Act.  <u>See</u> Def. Motion [Doc. # 24]. The Court held oral argument on defendants' motion on May 30,

2006.  For the reasons that follow, defendants' motion will be granted.

## I.  Factual Background

As set out in the Court's ruling on defendants' first motion to dismiss, Alfano worked for defendants from 1995 until his termination on August 30, 2002.  SAC ¶¶ 28-29.  Plaintiff's work was "excellent," he was never disciplined by defendants, and he consistently received "exceeds expectations" reviews, salary raises, and promotions from defendants.  Id. ¶¶ 30-34.  When plaintiff was terminated, he held the position of Line Manager. Id. ¶ 35.

Alfano alleges that during his employment his weight fluctuated and he was "on occasion obese, significantly obese, or morbidly obese."  Id. ¶ 39.  In the spring and summer of 2002, plaintiff weighed more than 360 pounds, at which point some of his fellow employees began to make fun of him because of his weight.  Id. ¶¶ 41-42.  Plaintiff asked the General Manager of Defendants' Bridgeport FBO, Timothy Bannon, to stop these insults, but Bannon "made light of Plaintiff's concerns in an insulting way and refused to take action," and the employees continued to taunt plaintiff.  Id. ¶¶ 45-46.  Around the same time Bannon also required all employees at defendants' Bridgeport FBO to wear new uniforms; however, plaintiff had difficulty obtaining new uniforms as the supplier did not carry any in

3

plaintiff's size.  Id. ¶¶ 47-50.  Bannon instructed plaintiff to
get the uniforms himself.  Id.  Despite repeated requests from
plaintiff, defendants failed to reimburse plaintiff for his new
uniforms and, as a result, plaintiff was the only employee at the
Bridgeport FBO who had to pay for his own uniforms.  Id. ¶ 51.

On August 30, 2002, Bannon informed plaintiff that he was
being terminated for violations of company policy, but did not
tell plaintiff what policies he had purportedly violated or
identify plaintiff's objectionable conduct.  Id. ¶¶ 55-56.
Further, plaintiff had received no warning of any kind prior to
his termination.  Id. ¶ 57.  Eventually, when plaintiff filed a
complaint against defendants on October 21, 2002, defendants
disclosed the policies at issue and explained how they had been
violated.  However, Alfano claims that defendants' allegations of
policy violations were without merit.  Id. ¶¶ 58-59.  Plaintiff
also alleges that as part of his job, he interviewed a Hispanic
woman for a position but, after determining she was qualified to
fill the position, defendants told plaintiff not to hire her
because she would be the only Hispanic woman "and not do [sic] to
any job-related ability or lack thereof attributable [to] said
Hispanic female."  Id. ¶¶ 60-61.  After plaintiff hired the woman
contrary to defendants' instructions, both plaintiff and the
woman were terminated.  Id. ¶ 62.

Plaintiff now claims that his "actual, of record and/or

4

perceived disability and his failure to engage in a discriminatory hiring practice regarding the Hispanic female were the sole causes of Defendants' decision to terminate his employment." Id. ¶ 71; accord id. ¶ 72 ("Defendants terminated Plaintiff's employment solely due to his actual, of record and/or perceived disability and as part of Defendants' discriminatory hiring practices.").[1]

## II.  Standard

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Jahgory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

---

[1] The Court notes the distinction between these allegations and those in plaintiff's First Amended Complaint [Doc. # 15], which stated that "Plaintiff's disability – actual, of record and/or perceived – played a substantial role in Defendants' decision to terminate his employment," and "Defendants terminated Plaintiff's employment due to his actual, of record and/or perceived disability."  First Amended Complaint ¶¶ 71-72.

evidence to support the claims.  Indeed it may appear on the face
of the pleadings that a recovery is very remote and unlikely but
that is not the test."  <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236
(1974).

**III. Discussion**

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a),
provides:

> No otherwise qualified individual with a disability in
> the United States, . . . shall, solely by reason of her
> or his disability, be excluded from the participation
> in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving
> Federal financial assistance . . .

In order to establish a prima facie violation of Section 504,
plaintiff must show: (1) that he has a disability as defined by
the Rehabilitation Act; (2) that he is "otherwise qualified" for
the position; (3) that he was terminated from such position
"solely by reason of" his disability; and (4) that the position
is part of a program that "receives federal financial
assistance."  <u>Rothschild v. Frottenhater</u>, 907 F.2d 286, 289-90
(2d Cir. 1990).

Defendants argue that, on the basis of his Second Amended
Complaint, plaintiff cannot possibly establish his prima facie
case because he pleads facts which, if taken as true, are
inconsistent with a showing that he was terminated "solely by
reason of" his disability.  Specifically, defendants contend that
because plaintiff alleges that he was terminated for two reasons

- his disability and his failure to engage in a purportedly discriminatory practice regarding the hiring of a Hispanic woman - he has admitted that his disability was not the only reason for his termination.

Plaintiff acknowledges that he pleads two reasons for his termination, but argues that dismissal is not warranted because "[o]nce an employee had made a case under the Act, the employer has the burden to articulate a legitimate non-discriminatory reason for discharging the employee." Pl. Opp. [Doc. # 27] at 2 (citing Heilweil v. Mt. Sinai Hosp., 32 F.3d 718, 722 (2d Cir. 1994)). Plaintiff contends that because the alleged non-disability based reason for his termination, the hiring of the Hispanic woman, is also a discriminatory reason, it "does not preclude Plaintiff from recovering for a violation of the Act simply because such discrimination also may have been a factor." Id.

While plaintiff's allegations that two discriminatory reasons motivated his termination, if proved, reflect reprehensible conduct potentially actionable under some federal statute(s), they preclude a successful Rehabilitation Act claim. Plaintiff's argument that a non-disability-based unlawful reason (such as termination for failure to engage in discriminatory hiring practices) cannot constitute a "legitimate non-discriminatory reason" in the burden-shifting analysis puts the

7

cart before the horse because plaintiff must first prove his
prima facie case and, as both parties acknowledge, "[t]o etablish
a prima facie case, a plaintiff must show, among other things,
that he was discharged solely on the basis of a disability."  See
Goss v. Long Island R.R. Co., 159 F.3d 1346, 1998 WL 538026, at
*2 (2d Cir. 1998).  Indeed, one of the few differences between
the Rehabilitation Act and the Americans with Disabilities Act
("ADA") is the Rehabilitation Act's limitation to denial of
benefits "solely" by reason of disability, whereas the ADA
"covers situations in which discrimination on the basis of
disability is one factor, but not the only factor, motivating an
adverse employment action."  Parker v. Columbia Pictures Indus.,
204 F.3d 326, 337 (2d Cir. 2000); accord Cercpac v. Health &
Hosp. Corp., 147 F.3d 165, 167 (2d Cir. 1998) ("Apart from the
Rehabilitation Act's limitation to denials of benefits 'solely'
by reason of disability and its reach of only federally funded –
as opposed to 'public' – entities, these provisions purport to
impose precisely the same requirements.").

        While plaintiff's counsel contended at oral argument that
the word "solely" in the Rehabilitation Act should be interpreted
to mean exclusive of any legitimate reason, he has proffered no
authority, and the Court has found none, justifying such an
interpretation which would contradict the plain text of the
statute, including its of the word "solely" without any

qualification.  In fact, courts have rejected similar reasoning in other cases.  See, e.g., Johnson v. Thompson, 971 F.2d 1487, 1493 (10th Cir. 1992) (affirming dismissal of Rehabilitation Act claims where plaintiffs alleged discrimination on the basis of disability and socioeconomic status, reasoning "[t]he word solely provides the key: the discrimination must result from the handicap and from the handicap alone. . . . Here, [plaintiffs] allege that the discrimination resulted at least in part from their low socioeconomic status.  That discrimination is not actionable under section 504"); Murphree v. Potter, 226 F. Supp. 2d 826, 832-33 (N.D. Miss. 2002) (dismissing plaintiff's Rehabilitation Act claim where plaintiff failed to allege that disability "constituted the sole predicate of her non-selection [for a promotion]," reasoning "[b]esides the patently plain language of the statute, the circuits that have had occasion to interpret its language have unanimously concluded that there can be no other cause to which the discrimination can be attributed aside from the employee's disability") (citing cases).

Thus, in order to succeed on his Rehabilitation Act claim, plaintiff would ultimately have to "introduce evidence sufficient to permit a factfinder to conclude that [he] was [terminated] solely because of [his] disabilit[y]."  Borkowski v. Valley Cent. School Dist., 63 F.3d 131, 143 (2d Cir. 1995).  Taking all of plaintiff's allegations as true, as required in considering a

motion to dismiss, plaintiff's own claims preclude the proof required to satisfy a Rehabilitation Act claim because Paragraphs 71 and 72 explicitly provide that plaintiff was terminated not only because of his disability, but also because of his hiring of the Hispanic woman against defendants' orders.

While the Court liberally construed the allegations in plaintiff's First Amended Complaint that "Defendants terminated Plaintiff's employment due to his actual, of record and/or perceived disability," and that his disability "played a substantial role in Defendants' decision to terminate his employment," First Amended Complaint ¶¶ 71-72, on the basis that the "solely by reason of" inquiry "is designed to weed out § 504 claims where an employer can point to conduct or circumstances that are causally unrelated to the plaintiff's handicap," Teahan v. Metro-North Commuter R.R. Co., 951 F.2d 511, 516 (2d Cir. 1991), and because plaintiff's use of the word "substantial," while imprecise, did not "foreclose the possibility of [plaintiff] proving that the termination was solely on account of his morbid obesity," Dismissal Ruling at 6, the revised allegations in plaintiff's Second Amended Complaint demonstrate that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkieicz v. Sorema N.A., 534 U.S. 506, 513-14 (2002). The "solely by reason of" language in Section 504, with its "weed[ing] out" purpose,

10

serves to isolate the disability discrimination to which the statute is directed.  If a plaintiff believes that his or her termination was motivated, at least in part, by an unlawful reason other than disability, he or she can assert an alternative claim, but the Rehabilitation Act by its explicit language does not provide a back door to litigating other potentially illegitimate reasons for adverse employment actions.

Thus, while the Court is mindful of plaintiff's argument that "[s]hould Defendants succeed in their argument, they would essentially escape liability under the Act by violating established civil rights and gender discrimination laws," Pl. Opp. at 2, because in this case plaintiff's other potential claims are procedurally barred, plaintiff identifies no authority that justifies ignoring the explicit requirement in the statute and relevant case law requiring him to prove that he was terminated "solely by reason of" his disability.

## IV.  Conclusion

For the foregoing reasons, defendants' motion [Doc. # 24] is GRANTED and plaintiff's Second Amended Complaint is dismissed. The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 12th day of July, 2006.**

11